Case number 21-3006 United States of America v. Deon Cole, Appellant. Mr. Axsom for the appellant, Mr. McGovern for the appeal. Good afternoon, counsel. Mr. Axsom, please proceed when you're ready. May it please the court, counsel. Tony Axsom representing Deon Cole. I'd like to reserve three minutes for rebuttal. Remand for resentencing is required in this case because the district court clearly erred when it ruled as a matter of fact that the gun that Mr. Cole possessed was stolen. The court based this finding on the PSR that relied upon a complaint and a police report that in turn said that an NCIC check said that the gun had been reported stolen. The government did not prove these layers of hearsay reliable and therefore it was error for the district court to rely upon them. This court has said that information in a PSR does not become reliable because a court adopts the PSR. And police reports, which the NCIC is the only way to classify the NCIC information in this case as a police report, is similarly not inherently reliable. And this court has in fact referred to police reports as an untested source, suggesting that they are affirmatively not reliable unless they're until proven otherwise. Can I ask you the following question? So suppose an officer testifies at sentencing that the search was conducted of the NCIC, if I'm using the right acronym, and the results came up to show that the gun with the serial number had been reported stolen. Would that constitute the kind of evidence you'd be looking for as reliable? Well, you would still have a layer of hearsay because someone obviously reported. We don't have a declarant with the actual substance of the final statement. So that's definitely true, and there's always going to be that issue. But I took the most vigorously asserted point in your briefing to be that this case is different from other cases because you never had the actual results of the report entered. What you had was a report of the report in the PSR. And so I guess I'm trying to get past that by asking, suppose then you had an officer who came and testified at sentencing and said, oh, yeah, I ran that check, and here's what I came up with. And that would – that seems to me to be – to get very close to actually having the report itself. Oh, that's certainly closer to having the report. I think the question for the court would still be what are the indicia of reliability, and that's why I went straight to, like, the substance of what it said. Isn't it fairly common that in district court these PSRs would have similar statements in them that they – as to what the NCIC – what they show as to the relevant criminal history? Isn't that pretty common? Oh, it's very common, especially as it relates to criminal history. Yeah, and it is not the case that the judge has to determine – is it the case the judge has to say every time, oh, well, these are inherently reliable or these are usually reliable or these are reliable, to receive information from those sources? No, I'm not saying that the judge has to say that every time, but certainly when the defendant places something in dispute, places even a conviction, and I think NCIC reports – How exactly did the defendant place in dispute this – the reliability of the report here that it was a stolen weapon? He said we object to the use of the NCIC information. We don't know where it came from. We don't know whether it's just a docket. We don't – often guns are reported stolen, and that is an incorrect report. So you're saying then that when you raise that, just by saying we object to it, that that's enough to require the judge to make a finding before he could rely on it as part of the history? No, I'm not saying, like, a general objection is enough. I'm saying in this case there was a specific objection about a conclusion, and the conclusion is that the gun is stolen. There are no facts in this record to support that conclusion. So in this case, in this kind of context where we're dealing with a NCIC – I understand the layers, but the thing that has assertedly been reported to NCIC is a stolen gun, I take you to be suggesting two things. One, that the reliability of that underlying report is something, at least one questioned, that has to be substantiated. And two, that it might be different for different kinds of NCIC information. And I hear you to be saying that if it's somebody's prior convictions, that person has personal knowledge of their own criminal record. They can challenge that this is a little bit different because the individual does not necessarily have personal knowledge of the accuracy or not of the stolen – the punitively stolen character of the gun. So are you carving out this type of reliance on NCIC from reliance on NCIC, let's say, for prior offenses? I certainly am, for the reasons that the court says. But a conviction is something that is easily verified, and there are many markers in convictions that allow both the defense and the prosecutor to verify that information. This court has also said that certified convictions are not hearsay themselves. But even in Carter, where the defendant raised an objection to a conviction that had been reported from some database, it was very easy in sentencing for the government to come in with the actual certified record, and it was then easy for this court to say it was proven reliable in this case. So is – I just don't know the answer to this – is NCIC something that you could access, given the gun number, or is that not something that – No, NCIC is generally accessible to law enforcement only. So I will say, as a member of the Office of the Federal Public Defender, it has been made available to our investigators on occasion. But it is not something that we have unregulated access to, as law enforcement does. But that raises another point in this case, is that there is no record evidence about how information is entered into NCIC, how it's verified, why it should be reliable at all. I'm certainly making a distinction between convictions, again, that just bear – historically have a greater – we're more willing to rely on a conviction because it is firm, it's definite, it's certain, we know where it's coming from. And all of those things are in the dish of reliability. That brings me back to the other question, though. If that's your position, is it the case that the judge has to do that – make that finding and inquiry every time that there's an NCIC reference in the file? No, no, not every time. But where the defendant specifically calls a reference into question, as was done here, then the court needs to be satisfied that in dish of reliability, have corroborated what is in that NCIC report. Here, again, the NCIC report is virtually – I don't know any other way to say it. It's an anonymous source, essentially. I mean, it's something that wouldn't even rise to the level of reasonable suspicion. The court had to find this evidence reliable by preponderance. So there's simply no – But there was no evidence on the other side. I'm sorry? There was no evidence on the other side. You say by preponderance. Preponderance involves comparison of evidence. There was no defense evidence on this. Well, where one party bears the burden, and I don't think it's disputed, the government bore the burden to prove the reliability of the evidence. The defense did not have to stand up and say anything. You're back to saying they have to prove the reliability. They have to determine that to be a fact by some level of certainty but not beyond a reasonable doubt on the sentencing phase. Only by preponderance, but there – There's an old phrase, undisputed evidence, and nothing here disputes the evidence, does it? It's simply – you're saying it's not strong enough. Well, there's a conclusion here, and stolen gun is simply a conclusion. Facts that might prove that conclusion would be on this date, at this time, at this location, I, a known person, was robbed of my gun, or the gun was stolen from me, and what were the circumstances? It was in a safe. It was unlocked. Someone has, like, affirmed at a minimum that there is a story that underlies this conclusion. So it's your position, just to be totally clear, that having the NCIC report itself, which I recognize was not even in the record, but having it in the record would not change your argument? I don't think it would change my argument, but I have to confess, I, as I stand here right now, am not sure how NCI data is amassed, verified. So something would have to be provided to support the sense that that is – that with respect to a report of a stolen gun, such a report as it appears in an NCIC report is reliable, and then it would have to be this gun that appears, and that you're saying – so you're saying it's possible that that would be sufficient, but we don't have that. That's correct. And that's why the test of whether there are sufficient indicia of reliability is changes from case to case, facts to facts. So I take you to – go ahead. Speaking of changing from facts to facts and case to case, how would you distinguish this case from Brevard, where we said the district judge's – there was error in the guidelines, but the district judge's alternative reliance on 3553 sufficed to support affirmance? I think in Brevard there was no dispute as to the underlying facts, and here there is a dispute as to underlying facts. We were saying, like, there is a fact that was obviously important to the district judge. It is – it can't be characterized as a mitigating factor. It was an aggravating factor. A stolen gun is an aggravating factor, and the judge said that it was an important fact to him. He did not disavow that fact. He relied upon that fact both for the guidelines and the alternative sentence. And – How did he rely on it for the alternative sentence? He said that – He said that the sentence was what was necessary to protect the public from your crimes. He referred to his criminal history. He referred to the lack of passage of time between his brushes with the law. Did he also say, I'm relying on the stolen gun? He had already said that he was relying on the stolen gun, and he understood why the guidelines would even take a stolen gun into consideration. He said that it was his view that stolen guns are used in – I thought he was following that up with saying that he was entering – he would have entered the same sentence without that, wouldn't he? No, he said that he would enter the same sentence regardless of what the guidelines said. And I think that – I think that that's a difference. And he did not disavow. He did not ever claim that he was not relying on the stolen gun. Wasn't that the point of saying he wasn't relying on the guidelines? He was talking about that element of the guidelines, and he said that wasn't it. Well, he wasn't – his point in saying that he wasn't relying on the guidelines was obviously to offer an alternative sentence that – But why was he doing that? And I understood the reason why was so he could be saying that this aggravating factor was not – Well, my only point is that he did not actually say that this aggravating factor is not – he also did not talk about – That was not the words that he used, but the whole point of that part of the discussion was to set aside the need to rely on the disputed element, wasn't it? I would take issue – no, I don't think that that's – Well, can I ask you this? So he starts out by saying the language that you rely on, which is I think stolen weapons tend to be much more likely to be involved in felonious activity. I think that's the part of the transcript that is being used by you. That's correct. Do you at least acknowledge that having said that, he could have at least said something that would disabuse us of the notion that the sentencing enhancement mattered such that we would say on appeal we're going to affirm because the reliance on the sentencing enhancement turned out not to matter? He could have at least done something. If it truly did not matter, I think that he could have and should have. So at least there's language that's possible that would have disabused anybody of the notion that the sentencing enhancement actually affected the bottom line sentence. Yes. And if that's true, then what more could he say? Because he said, ultimately, however, the fact that the gun was stolen, while I do think it's appropriately counted – first of all, that's not the guidelines. That's the fact. The fact that the gun was stolen, while I do think it's appropriately counted under the sentencing guidelines, I want to make clear that this is not going to impact the sentence I intend to impose here, given – So if it's possible for him to have done something and he said this, what I just quoted, what's the gap? What should he have said more than that? I'm sorry. Could you direct me to – Oh, sure. I'm sorry. It's 108. 108 of the appendix at the bottom, starting at line 20. I think at line 8 to 10 is the language that you understandably rely on. That's correct. Starting at line 19 is where he explains, ultimately, however, the fact that the gun was stolen, while I do think it's appropriately counted under the sentencing guidelines, I want to make clear that this is not going to impact the sentence that I intend to impose here, given the evidence – and then he says a bunch of things that seemingly are favorable – lack of evidence that you knew that the gun was stolen, and primarily given the arguments that your attorney has made, speaking to your client, and the fact that the government's not seeking to have additional punishment. I would actually – I think that that statement is less ambiguous than – is more ambiguous than the way that you're reading it. I see. Because he doesn't actually say, I want to make clear that this is not going to – he says, I want to make clear that that. And when he says, I want to make clear that that, he has said, he's referred to the fact that the gun is stolen and the guidelines. Why would he have bothered, unless he is disavowing the use of the gun as an item of sentencing under the alternative sentence? I don't understand your argument that he was doing that to create – yes, he was doing it to create an alternative sentence, but why would he have bothered with that unless he was exposing the gun in the meantime, the stolen nature of the gun meantime? I'm not following you. Well, the most obvious, like, blunt reason that I could give would be to insulate the sentence from review by this court, to essentially say, even if I'm wrong about the guidelines calculation, which I am required to do, I would impose the same sentence. He doesn't say, even if I am wrong about everything that I – Why would he have bothered doing that unless he was taking care of the situation in which we found it erroneous to consider the gun? Because an incorrectly calculated guideline range is absolutely – is – this court has said. Yeah, I just – I think – I mean, he's following up ably himself, but I think the question is, isn't the only guideline error that is on the table that the district judge is thinking about and indeed is addressing specifically is an error that turns on whether it's been shown that the gun was stolen or not. And so doesn't that mean it becomes one and the same thing to refer either to the fact that the gun was stolen – I'm going to put that to the side – or even if I'm wrong about whether the enhancement applies? Because those are two sides, I think, of the exact same coin, at least in these facts. And so if you could help us sort of see daylight about that, I think that's – as to what the judge was relying on. A remand would be required for him to clarify whether he indeed found that the gun was stolen as a matter of fact. I don't think that there is – it would be a very – But why do we care? Because why does it matter if he indeed found that the gun was stolen as a matter of fact if he's already told us that it's not going to matter because he's still going to impose the same sentence of 37 months? That's just – I don't know how else to read the transcript other than for him to have said this. And as I recall, 37 happens to be the intersection of the two ranges, 30 to 37 and 37 to 46. And he just says, I'm imposing 37. It doesn't matter either the fact of whether the gun was stolen or the applicability of the enhancement, even if we assume that there's a distinction between those two. It doesn't matter because I'm going to impose 37 anyway. Because it's unusual to rely on a fact and on the one hand say that it does matter and you understand why it matters under the guidelines. And you, what I would say, independently understand why that is a consideration under the guidelines and then to at the exact same time hold the thought in your head that that is – But that gets back to the first question I asked you, which is is it conceptually possible that he could have said anything to reach the result that the government wants us to reach, which is that even if he made an error in applying the guidelines, it still wouldn't matter. And if it's conceptually possible, and I think our cases say that it is, then I'm not sure what more the judge could have done. Well, I think it's an easy thing for a judge to say even if I made an error, I would do the same thing. What I'm suggesting is that a judge, there should be some explanation as to why that error does not impact the ultimate sentence. Especially when – I think he gave one. I think he talked about the reasons why he arrived at the sentence he did. And I just, I'm sorry to take you back somewhere else, but let me just make sure I understand the argument on the antecedent question of whether there was an error in the first place. Just one last question, please. So there's two potential deltas here. One is the NCIC report was never entered. And so there's a gap between the PSR reporting the results of the NCIC search and the report actually having been submitted. And then there's the second layer, which is even if the NCIC report was entered, that wouldn't matter itself because all it tells you is that there's a report of a weapon being stolen. That's not enough unless you have more information about the reliability of that underlying allegation. Now suppose – I totally understand the force of your submission as to the second one, and I don't want to deny that. But for present purposes, let's just suppose I'm only focused on the first one. If that's true, then is there a difference between having the NCIC report itself having been admitted and the criminal complaint having been admitted, which is – and the criminal complaint has an officer swearing that that was the result of the search of the NCIC database? There may be a difference of degree. Okay, a degree but not a – but you're not – I don't think it's significant because a complaint is essentially a police report. But it's sworn. It is sworn. And just to addify, I don't know the answer to this. Are reports also or not? I don't – I'm sorry. Police reports have a signature line. I don't think they're sworn the same way as a complaint. Right, and that's the difference. But the reason I say it's a degree, and I actually think it's a very small degree, because that degree would have to have – would have to assume that police reports are – that there are many falsehoods in police reports. I mean, there is – police reports are not inherently reliable in the same way that a criminal complaint that is simply a recitation of a police report is not inherently reliable. It's not the signature. It's not the swearing that convinces a police officer to tell the truth in a police report. It's not the swearing that convinces them to tell the truth in a complaint. So that distinction is not powerful between a police report and a complaint. And I'll also say the language is the exact same. It's the exact same in the police report that is in the complaint, and that's a common occurrence. Most Gersteins are simply the police report cut and paste. Right. I mean, usually in courts we think that there's something significant about swearing. That's why we require it. Certainly. And I'm definitely placing police officers in a different category from citizens. I see. But, again, reliability turns on many factors. When we're used to a pattern of behavior and we recognize what is going to happen in that pattern, when we see that pattern again, we're more willing to accept it as reliable. And that's my point. So I take it that your position is that under the case law, that you did not have to factually dispute in sort of the summary judgment sense the information that was before the district court about the gun being stolen because it didn't even rise to the level of something that was sufficiently reliable to support a factual finding by a preponderance. Is that correct? That is correct. So it was disputed in the sense of preserving the objection, but it wasn't disputed and needn't be disputed in the kind of material issue of fact sense. That's difficult to say because if more facts had been presented, we would have had, the defense is being asked to prove a negative. The government says the gun is stolen and now we have to prove that it is not stolen with no facts underlying for why the conclusion exists. And no access to those facts. Exactly. And no access to those facts. So what's your best case for, you know, effectively the government hasn't jumped over its first hurdle and therefore just pointing to that is enough. You don't have to also, you know, push back. I would say all of the cases that talk about the burden of proof at sentencing for the government. I'd say Price, Pinnock, Carter, I believe Burke. I'm not sure Burke is cited in my brief, but I mean it's settled that the government bears the burden to prove any fact that the district court wishes to rely upon at sentencing. But isn't it also fixed law that the rules of evidence do not apply with the same stricture at sentencing that they do at trial? That is to say hearsay is frequently accepted, routinely accepted in sentencing. It absolutely is, and I'm not trying to undermine that in any way. I have, I'm making one point that when hearsay is accepted at sentencing, it is accepted because there are certain indicia of reliability that have established that hearsay as reliable. And there are, those indicia don't exist in this case. The government didn't attempt to carry its burden, and for those reasons remand for resentencing is required. Let me make sure my colleagues don't have additional questions for you. This time we'll give you a little time for rebuttal. Thank you. Thank you, Mr. Axon. Mr. McGovern. May it please the court. Michael McGovern on behalf of Appellee of the United States. The district court's sentencing should be affirmed here, both because the record below was sufficient to show by a preponderance of the evidence that the gun at issue was stolen, and because even if this court has doubts about the state of the record below, any error was harmless. In its decision, the district court made very clear over the ten pages that it discussed why it was imposing sentence. It referenced on only two occasions its prior factual finding that the gun had been stolen. And on both of those occasions, its reference was to disclaim any reliance on that fact or the sentencing enhancement that that fact carried with it in its ultimate sentence. Instead, the court very specifically explained why it did not believe that aggravating circumstance was at issue here. It did not believe that Mr. Cole had any knowledge that the gun was stolen, and it accepted both defense counsel and the government's arguments that therefore it should not hold this against him as an aggravating factor. I follow that reading of the record, to be sure. And I think the only thing that's just a little bit ambiguous in, I don't know, not the only thing, but one thing that seems a little bit ambiguous in the colloquy is in the course of discussing the 3553 factors, the district judge does say, you know, I think stolen guns are much more likely to be used in violent crime, and it's clearly a dominant factor in his mind. And so I guess what I hear the defense saying is, are we at risk if we sustain this sentence of giving a message to district courts, you insulate your guidelines, calculations, and or just your sentences generally by saying, no matter what, I would oppose the same sentence. I don't believe so, Your Honor, and here is why. I think that when you read the sentencing court's statements in context, what he says, and this is on page 108 of the appendix, is I understand why the guidelines take this fact into account. I think stolen weapons tend to be much more likely to be involved in felonious activity. But the court there is doing nothing more than reciting what the 1991 amendments to the guidelines stated were the purpose of the enhancement. But he goes on to mention, and this is very important, that Mr. Cole himself does not have any information about this gun, that he's holding it for a friend, and that that gives him some concern. And so it's not the fact that this gun is stolen, but there is some reference. And this is prior to, I'll also note that all of this colloquy comes prior to a very specific transition in the sentencing court's statement. And that specific transition is on page 109 where he says, I do take into account. And at that point, at no point after that, does he again mention either the fact that Mr. Cole did not know the origin of this gun, other than the fact that his friend had given it to him to hold, or the fact that the gun was stolen. And so I think although the district court mentions his prior factual finding, he mentions that the guidelines do account for an enhancement, and this is the reasoning behind that, and he agrees with that reasoning, he specifically disclaims that this defendant has any knowledge that this gun was stolen, and goes on to state what he does take into account. And he goes on for many pages to describe the many reasons he felt that this was a very dangerous situation. I'm not sure why you're emphasizing that he accepts the lack of knowledge, because the lack of knowledge isn't needed for the finding, at least under the guidelines, to be counted against the defendant. So I take you to be making the broader point, which is that he's setting the gun-stolen status aside in making an alternative sentencing. Correct. And he's explicitly explaining why to him it is not carrying an aggravating factor, why he doesn't believe that fact should be considered an aggravating factor here. So are you not really defending the reliance on the stolen gun under the guidelines? We don't believe the district court relied on the fact that the gun was stolen in his sentence. But he did in the calculation of the guidelines quite explicitly. Correct, Your Honor. Yeah, and I'm just asking whether... It sounds like you're asking us to affirm based on the alternative ground. We do believe that you should affirm on the alternative ground, but we do believe that there is a legal basis to affirm on the factual finding that the gun was stolen. The sentence calculation. So on that point, what is your position about two related questions? One, what the defendant would have to show to put in issue the reliability of the gun-stolen character? And the prior point, what does the government have to show to reliably, even if with hearsay, establish the fact? The government must show by a preponderance of the evidence that the gun was stolen. And it did so here by placing into the record a statement that there was an NCIC database. When the NCIC database was searched for this weapon, which carried a very specific serial number, it was reported as stolen in Prince George's County in 2019. So they put in a statement, and by that you're referring to the statement that the PSR referenced that was the police officer's statement. Correct. And at page 29 of your brief, you argue, if a defendant does not concede the factual matter, the proponent of the enhancement must present the district court with reliable information that supports this assertion by a preponderance of the evidence. And this is a little bit of an unusual case. Who's the proponent of the enhancement here? The proponent of the enhancement, the probation officer who wrote the PSR is the individual who was putting in information to support their calculation in the PSR. And in your view, the reliable information that the proponent put forward was? The statement that was contained within the criminal complaint, which was also a part of the record, which they verified did appear as well in the police report for this incident. And how do you answer Mr. Axsom's point that this is really unlike a lot of the other information in NCIC that courts have accepted as sufficiently reliable, at least if not put in dispute by a defendant, because it's like an anonymous tip? What more could the defendant do? Assume that this is completely a lark that someone called in this number. So the defendant was the individual in possession of the gun. So he's in the position to understand how he came into possession of that gun and to track back the chain of custody of that gun. He is in a position to, if there is reliable evidence that there were legitimate transactions which resulted in his obtaining this firearm, present evidence of that. He's also in a position to take a look at the number contained that the search was done on, the serial number, and compare that to the serial number if he received it in discovery. Here he actually confirmed the serial number in his allocution of facts when he was found guilty. So there are ways in which he can challenge the reliability of this report. But the overarching... Multiple circuits have recognized that the NCIC information contained within that database is reliable even in circumstances where we're talking about reports of stolen guns. And that's the 3rd Circuit in Gray, the 4th Circuit in Walker, the 4th Circuit in Moffat, the 11th Circuit in Saunders. And they all recognize that the general judicial understanding of the reliability of this database shows. And I don't think there's any dispute here, or I'm unsure if there's been made a dispute, that at the very least, the NCIC database is a reliable statement that someone reported it stolen. And what we have here is that gun appearing in someone else's hands, someone who isn't allowed to have it. So in fact, it is being corroborated, and then there is no other evidence in the record that it was not stolen or that there was a legitimate source for this. And so at that point, the question is, has the government shown through that information that it is more likely than not that this was stolen? And so it's your position that part of the assumption behind the reliability of the NCIC report that it's stolen is that if it were not, that Mr. Cole could ask the friend for whom he was holding the gun, where did you get this gun? Certainly. And that person would say, I bought it from someone else, and then he could go to that person and figure out whether it was stolen. Certainly he's in a position to do that, but also the reliability of the report is that this is a specific report of a specific gun that's being given to the police. That's subjecting the person that's reporting this gun to potential criminal charges for false statements to police officers. The report of a gun is different. What about that information? That's not available. If I report a gun stolen, if I was the reporter in this case that reported this gun stolen, there's not a way for Mr. Cole's counsel to find out who I am and ask the basis of my report. Is there a way for the—is there? That's unclear to me. It's not in the record. I don't know that Prince George's County wouldn't have a record of the report that was made, and he does have the serial number that that report was made on and the date or the approximate date, the month and the year of the report. Does the NCIC report reveal that kind of information? That was in the criminal complaint. It specifically says who was reporting. No, no, no, the person who reported it. Who reports? Does the NCIC report tell you anything other than someone reported that the weapon was stolen? That is not in the record, so to the extent that it does, it's not indicated here. It certainly doesn't appear that— Do you happen to know? I mean, you must have looked at NCIC reports, or maybe not. I don't happen to know. Based on a review of NCIC's website, it appears that the information that's contained includes the serial number. So I'm not really asking about the serial number. I'm saying if I were the person that called in the gun, is there a difference between the government's ability to find out my identity and Mr. Axsom's ability to find out my identity to bring me in as a witness to potentially say the reason I reported this as stolen is because the gun belonged to me. It was on the front seat of my car. I went into the grocery store, and I came back, and the window was smashed, and the gun was gone. If that's the evidence that would be certainly more reliable, are you in a better position, the government, to identify and bring that witness than Mr. Axsom? I don't know that I can answer that question on this record. It seems important, doesn't it? Well, again, hearsay is loud. Reliable hearsay. Reliable hearsay, but what we do have is a report of a specific gun with a specific serial number that was reported as stolen, and that gun with that serial number showing up in an individual's hands who's not allowed to have that, who's holding it for another individual who asked him to hold it. But it's also factually possible that a specific gun with a specific serial number is reported stolen, and it wasn't. That's possible. It's possible. So then the question becomes who has access to evidence that tends to prove or disprove the underlying fact? I think the question becomes whether or not, especially if you look at the particular issue of reliability that was raised below, was that some of these are falsely reported stolen. There's no information about how often that occurs, and there's been no support to the challenge to reliability to say that this happens more often than not, even if it could be shown that at times people report these as stolen. How should we treat it, though, differently from an anonymous tip? I mean, we don't necessarily, in a case where someone is relying on an anonymous tip, the person who says, hey, that's unreliable, doesn't have to bring in data about how often anonymous tips are reliable or not. But here you have an anonymous tip that is corroborated by Mr. Cole's then later possession of that gun. I'm not sure about that. If the anonymous tip is that, hey, that gun was stolen, and we have no idea who the person was who says that, then, of course, the consistency later in the chain between the gun that was erroneously reported as stolen and the gun that Mr. Cole had, it doesn't go to the reliability of the tip. It just shows you that the gun that was erroneously reported as stolen is the same gun that ended up in Mr. Cole's hands. But there is an individual who's making that report to a police department and specifying the at least serial number and providing information. It would not be the norm that NCIC would reveal any more information than this one did, but you do know the county and the date, as you said. Could your PSR investigators have checked with the Prince George's County, whatever county it was, to see if they had a record of who made that report? The PSR reporter would have that access to be able to call down to see. It's unclear to me the defense counsel couldn't similarly call Prince George's County and ask if there had been a reported stolen gun on a certain day. But you don't know that. Correct. But even if this court is concerned with that basis for affirming, again, the district court here didn't rely on that specific information in its ultimate sentence, and therefore we would ask you to affirm. Thank you. Let me make sure my colleagues don't have additional questions. Thank you, Mr. McGovern. Mr. Axon, we'll give you the three minutes that you asked for for rebuttal. Thank you. With regard to the serial number, I don't want to belabor whether a serial number can be tied to a gun, but I do want to say that as the record exists, this court has no understanding of how serial numbers are recorded on guns, how they're entered into NCIC, how any report is created in NCIC related to a serial number at all, whether a box is checked, whether serial numbers are sequential so that a mistake can be made. So I think, again, because it was the government's burden to show the reliability of the system that they were using to draw the conclusion that the gun was stolen, to the extent that there are questions about how that occurs with just a serial number and nothing else, the government has failed to carry that burden. The serial number itself actually only proves that it's the same gun, even by the government's best estimate. It does not prove anything else. It doesn't prove that there's a theft, and what is at issue here is that there's a theft, is that the facts underlying. So, again, the government has chosen not to carry that burden below, has not pointed to any facts in the record that establish it now. With regard to the district court's ultimate sentence, I would, again, just reassert that the district court did not affirmatively disavow that it had found that it was relying on the fact that the gun was stolen. It also didn't disavow other things about, for example, the defendant's criminal history or facts underlying the criminal history. It certainly did give reasons for the sentence, but not reasons that made this case unique. If the court had properly calculated the guidelines and had varied above, it would have to give reasons that are sufficiently compelling. If it had departed, it would have to explain why a major departure was warranted, what major facts warranted a major departure. I understand that there is overlap here, but my point is that the district court did not explicitly disavow after having talked about this gun, accepted that the guidelines were correctly calculated using this gun, in many ways ratified the guidelines rationale for including stolen gun enhancement. To then, with a boilerplate statement, say, even if I'm wrong about everything else, what essentially happens in those circumstances is, let me put it this way. The district court should start the sentencing with, the guidelines do not matter to me. I will calculate them, and they don't matter because they're irrelevant. Because by saying this, I know that I can't be reviewed. Okay. At the same time, I don't think that's what Melina Martinez was saying when it allowed district courts to disregard the guidelines, and I think if a district court is actually going to disregard facts that it has found by a preponderance, I refer the court to page 84 of the appendix where it says, I find by a preponderance that the gun was stolen. Okay. If the district court is actually going to not rely on that, it needs to be very clear, and any ambiguity in that disavowal would still require remand for clarification. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Pillard, Sentelle